

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-273-CR

WILLIE CHARLES BOYNTON                                              APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Willie Charles Boynton of two counts of aggravated robbery with a deadly weapon and assessed his punishment at twenty years' confinement for each count. In a single point, Boynton argues that the evidence is factually insufficient to support his conviction. We will affirm.

---

[1] See Tex. R. App. P. 47.4.

At approximately 10:30 p.m. on September 17, 2006, a male entered a convenience store in White Settlement, pointed a gun at two store clerks, and demanded money. The perpetrator was black, Hispanic, or black and Hispanic; he stood about six feet tall, had a small, athletic build, and was between the ages of eighteen and twenty-five; he wore jean shorts, black gloves, a white and black bandana over part of his face, and a black or gray hoodie with the hood over his head; he carried a green backpack; and his gun was wrapped in a bandana that matched the bandana partially covering his face. The store clerks complied with the perpetrator's demand and gave him the store's money, and he left the store. One of the clerks later identified Boynton both in a photographic spread and at trial as the person responsible for committing the aggravated robbery.

Boynton argues that the evidence is factually insufficient to support his conviction because there was "conflicting and inconsistent" testimony regarding his identity as the person responsible for committing the aggravated robbery. When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although

2

legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

We may not substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

3

In a criminal trial, the State must prove that the accused was the perpetrator, and the accused stands innocent before the court until his identity is established beyond a reasonable doubt. *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd). Identity can be established by direct or circumstantial evidence or by inferences. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

The evidence showed that Darlene Archer was one of the convenience store clerks working on the night of the robbery. Archer testified that she thought the perpetrator looked like a young black man who was a little taller than her and probably not "old enough to buy beer." She was able to observe the portion of his face above the bandana: his nose area, his eyes, and a part of his forehead. Archer met with a detective after the robbery and viewed a photographic spread that contained Boynton's photo. Boynton's photo was included in the spread because a detective with the Saginaw Police Department had identified Boynton as a possible suspect in the case. Archer "immediately" identified Boynton as the person responsible for committing the aggravated robbery. Archer also identified Boynton at trial as the person responsible for committing the aggravated robbery.

Joshua Bayle testified that he worked at a Subway in September 2006. On September 16 at around 10:00 p.m., approximately twenty-four hours before the convenience store robbery, a man between the ages of eighteen and twenty-five entered the Subway carrying a green backpack and wearing a gray hoodie and a white and black bandana over his mouth. The store's security cameras captured images of the person. The Saginaw Police Department requested a copy of the footage.

Trivell Lewis testified that his brother attended high school with Boynton, that Boynton was a friend of his family, and that Boynton lived with his family for a period of time in 2006. Lewis had worked at the same Subway where Bayle worked. On September 14, 2006, Lewis took Boynton to the Subway to fill out an employment application. Lewis was later called to the Subway to view the images of the person who entered the store on September 16, and he concluded that the person in the images resembled Boynton; Lewis recognized the hoodie, he opined that the shorts worn by the person used to be his, and he last saw Boynton wearing black, high-top shoes similar to those worn by the person in the images. Lewis thereafter had a conversation with Boynton about the situation at the Subway. Lewis testified that he became one hundred percent sure at that point that the person in the images was Boynton because

5

Boynton asked about the bandana used by the person, but Lewis had not said anything to Boynton about the person wearing a bandana.

Margaret Garcia was the other convenience store clerk working the night of the robbery. She described the perpetrator as a black or black and Hispanic male who had a small, athletic build and was between the ages of eighteen to twenty-five. She observed the bridge of his nose to the middle of his forehead during the robbery, but she was unable to identify the perpetrator when she viewed a photographic spread. At trial, she was shown an image taken of the person at the Subway, and she opined that the person in the image was ninety-nine percent identical to the person who committed the robbery at the convenience store. The State questioned Garcia if she saw anyone in the courtroom who had features similar to the person who committed the aggravated robbery at the convenience store, and she identified Boynton because she recognized the shape of his eyes and his build.

Defense counsel attempted to cast doubt on Boynton's identity as the person responsible for committing the robbery by stressing that the police report identified the perpetrator as a light skinned black male or a *Hispanic* male. Defense counsel also elicited testimony from a witness who observed the perpetrator running from the convenience store and described the person as "Hispanic looking." Archer, however, testified that she never described the

6

perpetrator as Hispanic, and Garcia confirmed that she had described the perpetrator as black or black *and* Hispanic, not Hispanic. The witness who described the perpetrator as "Hispanic looking" confirmed that he had assumed the perpetrator was Hispanic because he had seen a lot of other people in his neighborhood wearing attire similar to what the perpetrator wore and because of a bias he harbored as a result of his vehicle being vandalized. The detective who showed Archer and Garcia the photographic spread testified that in his experience as a detective, witnesses can give varying descriptions of other people.

Defense counsel also pointed out that Archer was hysterical and upset when the robbery occurred and when she viewed the photographic spread, but Archer testified that she was "a thousand-and-one percent sure" that Boynton committed the aggravated robbery, and the detective opined that he thought Archer was a good witness because she immediately recognized Boynton as the person responsible for committing the robbery.

As the judge of the weight and credibility of the evidence, the jury could have given more weight to the direct and circumstantial evidence demonstrating that Boynton committed the robbery than it gave to any contradictory evidence; the mere existence of contradictory evidence is not enough to support a finding

7

of factual insufficiency.  *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 8–9, 12.

Viewing all the evidence in a neutral light, favoring neither party, the evidence supporting the conviction is not so weak that the factfinder's determination is clearly wrong and manifestly unjust nor does the conflicting evidence so greatly outweigh the evidence supporting the conviction that the factfinder's determination is manifestly unjust.  *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417.  We hold that the evidence is factually sufficient to support Boynton's conviction for both counts of aggravated robbery with a deadly weapon.  We overrule Boynton's sole point and affirm the trial court's judgments.

PER CURIAM

PANEL:  MEIER, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 1, 2009

8